IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CELESTINE THOMAS, on behalf      )
of herself and all other similarly   )
Alabama residents,               )
                                 )
            Plaintiff,           )
                                 )
      v.                         )        CASE NO. 3:11-CV-399-WKW
                                 )                [WO]
COUNTRYWIDE HOME LOANS,          )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND ORDER

Plaintiff Celestine Thomas originally filed this lawsuit in the Circuit Court of

Macon County, Alabama, on behalf of an Alabama class of similarly situated

individuals.  Defendant Countrywide Home Loans removed it to this court under the

jurisdictional provisions of the Class Action Fairness Act of 2005 ("CAFA"), 28

U.S.C. § 1711 *et seq.*, and 28 U.S.C. § 1332(d)(2).  Before the court is Ms. Thomas's

motion to remand for lack of subject matter jurisdiction, filed pursuant to 28 U.S.C.

§§ 1332(a) and 1447(c).  (Doc. # 7.)  Ms. Thomas contends that this action is due to

be remanded because the amount in controversy is insufficient to confer federal

jurisdiction.  Countrywide opposes the motion.  After careful consideration of the

fully briefed motion to remand, the court finds that it is due to be conditionally

granted, as explained in this opinion.

# I.  STANDARD OF REVIEW

Federal courts have a strict duty to exercise the jurisdiction conferred on them by Congress.  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).  At the same time, "[f]ederal courts are courts of limited jurisdiction." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  Against that legal backdrop, in actions removed from state court to federal court, federal courts strictly construe removal statutes, resolve all doubts in favor of remand, and place the burden of proving jurisdiction on the removing defendant.  *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328-30 (11th Cir. 2006).  These principles were well established long before the enactment of CAFA, and the Eleventh Circuit has made clear that, notwithstanding CAFA's expansion of diversity jurisdiction over class actions, these principles remain undisturbed.  *Id.*; *see also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010) ("'CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction.'" (quoting *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006)).

Additionally, because this action was removed within thirty days of Countrywide being served with a summons and copy of the complaint, *see* 28 U.S.C. § 1446(b), the standards enunciated in *Pretka* govern.[1]  In *Pretka*, the Eleventh Circuit

---

[1] Section 1441(b) recently was amended and became effective on January 6, 2012.  *See* Federal Courts Jurisdiction & Venue Clarification Act of 2011, Pub. L. No. 112–63, 125 Stat.

held that, as to removals based on the first paragraph of § 1446(b), no limitations exist as to the evidence a federal court may consider when the removal is timely. *See* 608 F.3d at 768 (rejecting dicta in *Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007), that a removal under the first paragraph of § 1446(b) must be based on a document received from the plaintiff). Hence, under paragraph one of § 1446(b), "the evidence the defendant may use to establish the jurisdictional facts is not limited to that which it received from the plaintiff or the court." *Id.*

## II. BACKGROUND

In her class action complaint, Ms. Thomas challenges Countrywide's alleged unlawful business practices of "closing residential mortgage transactions" in Alabama and "target[ing] Alabama residents for predatory, 'subprime' equity loans." (Compl. ¶ 3.) She alleges that Countrywide unlawfully induced Alabama borrowers to enter into residential loans with high and adjustable interest rates, three-year prepayment penalty provisions, and discount fees that yield no corresponding interest rate reduction. Other predatory lending practices challenged by Ms. Thomas include "bait and switch" tactics, "flipping" loans (*i.e.*, persuading borrowers to refinance existing loans on disadvantageous terms), oppressive "marketing techniques to prey upon low income Alabama homeowners," and false representations that Countrywide's

---

758. Because this action was commenced prior to the Act's effective date, the Act does not apply to this action. *See id.*

3

mortgage loans are "sound financial transactions that will save borrowers money." (Compl. ¶¶ 37, 39, 43, 44.)

Ms. Thomas alleges that in October 2005, she became a victim of Countrywide's deceptive practices when she refinanced her residential property mortgage loan through Countrywide. (Compl. ¶ 20.) She contends that, as part of the refinancing, Countrywide encouraged her to consolidate her unsecured debt into debt secured by the residential property without disclosing the risks of debt consolidation. (Compl. ¶ 26.) Countrywide allegedly charged her "junk fees" to "bloat the loan," including "false points, closing costs, origination fees, appraisal fees, credit report fees, flood check fees, tax service fees, service charges and other fees," did not properly disclose certain fees, and misrepresented the amount of the fees. (Compl. ¶ 27.) As further alleged, Countrywide provided financial advice to earn Ms. Thomas's trust only in order to "induce [her] [to] take out the loan at a higher cost," all the while knowing that she "ran a risk of having insufficient cash flow to cover all the dedicated expenses." (Compl. ¶¶ 30–31.)

Ms. Thomas seeks relief for herself and "all other similarly situated Alabama residents" for Countrywide's "pattern and practice of wrongful and illegal conduct." (Compl. ¶ 33.) The proposed class is defined as including all individuals "(i) who presently own, or during the Class Period owned property (including mobile homes)

in Alabama, and (ii) entered into a mortgage loan transaction relating to such Alabama property with [Countrywide] . . . at any time between January 1, 2005, and the present." (Compl. ¶ 48.)

Ms. Thomas brings state law claims for fraudulent misrepresentation, fraudulent suppression, breach of contract, negligence, wantonness, and conspiracy. She requests restitution, disgorgement, declaratory relief, injunctive relief, compensatory damages, punitive damages, prejudgment interest, costs, and attorney's fees. The Complaint also includes a stipulation that "the amount in controversy is less than $5,000,000.00 (five million dollars)." (Compl. ¶ 12.)

Although this action began in the Circuit Court of Macon County, Countrywide removed it to the United States District Court for the Middle District of Alabama within thirty days of being served with a summons and copy of the complaint. *See* § 1332(d)(2) (governing class action removals); § 1446(b) (governing removal procedures). In its Notice of Removal, Countrywide sets forth two grounds for federal subject matter jurisdiction. First, it contends that jurisdiction over this CAFA action is proper because the minimal diversity requirements are satisfied, there are more than 100 plaintiffs, and the monetary claims exceed $5 million in the aggregate. (Not. of Removal ¶ 8); *see* § 1332(d)(2), (5). Countrywide argues that it is clear from the allegations in the Complaint, as well as from the evidence attached to the Notice of

Removal, that the amount in controversy exceeds $5 million as required by § 1332(d)(2).

Second, assuming the putative class action does not meet CAFA's jurisdictional requirements, Countrywide asserts that Ms. Thomas's individual action independently satisfies § 1332(a)'s requirements for diversity jurisdiction.  That being the case, Countrywide contends that § 1367 permits this court to exercise supplemental jurisdiction over the prospective members of Ms. Thomas's class, even if their individual claims fail to meet the amount in controversy threshold.  As to the $75,000 amount in controversy, Countrywide relies on the declaration of John Truong.[2]  He says that Ms. Thomas was charged $4,951.75 as "total settlement charges" for her loan.  (Truong Decl.)  This total includes numerous fees, including charges for discount points, processing, credit report, appraisal, tax service, and flood check. Because Ms. Thomas calls each of these points and fees into question, and requests restitution and disgorgement, Countrywide contends that $4,951.75 is the starting point for the amount in controversy.  Add to that Ms. Thomas's request for punitive damages, calculated based upon a single digit ratio between punitive and compensatory damages ($4,951.75 multiplied by 9), and Countrywide contends that the amount in controversy threshold easily reaches $49,517.50.  It then asserts that the

---

[2] Countrywide attaches to its Notice of Removal a declaration from John Truong, a senior business control specialist at Bank of America, N.A., the predecessor in interest to Countrywide.

6

amount in controversy exceeds $75,000, when damages for mental anguish and emotional distress and the value of declaratory and injunctive relief are considered. "As a result, the minimum amount in controversy is well above the $75,000 requirement for diversity jurisdiction and 1332 is satisfied." (Not. of Removal ¶ 22.)

Ms. Thomas responded by filing a motion to remand to state court. She challenges Countrywide's ability to prove the amount in controversy under CAFA since her Complaint contains a stipulation to an amount in controversy less than $5 million. She further contends that, although the Complaint leaves the amount of damages unspecified as to her individual claims, she "stipulates that her damages are no more than $74,999.99, and [that] she will file a supplement to this brief in support of remand with an affidavit to that effect."[3] (Resp. to Mot. to Remand 6 n.1.) In addition to the latter stipulation, Ms. Thomas contends that Countrywide's calculations are too speculative to satisfy its removal burden. She concedes that the diversity requirements under CAFA and § 1332(a) are satisfied.

---

[3] The affidavit, to date, has not been filed.

7

## III.  DISCUSSION

The jurisdictional dispute concerns only whether the amount in controversy meets CAFA's requirement of more than $5 million or, alternatively, satisfies § 1332(a)'s requirement of more than $75,000 as to Ms. Thomas's individual claims. These issues bring front and center the sufficiency of Ms. Thomas's stipulations limiting recovery to amounts less than CAFA's and § 1332(a)'s jurisdictional minimums to defeat removal jurisdiction.  Two stipulations are at issue:  (1) the Complaint's stipulation that the "amount in controversy" is less than $5 million (Compl. ¶ 12); and (2) Ms. Thomas's stipulation in her brief in support of her motion to remand that her individual "damages are no more than $74,999.99."  (Mot. to Remand Br. 6 n.1.)

## A.    <u>Ms. Thomas's Stipulation as to the Amount in Controversy Under CAFA</u>

CAFA confers federal subject matter jurisdiction over qualifying class actions where the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  § 1332(d)(2); *see also Pretka*, 608 F.3d at 751.  The claims of the individual class members are aggregated to determine whether the amount in controversy exceeds $5 million.  *See* § 1332(d)(6).

Here, the Complaint includes a stipulation that "the amount in controversy is less than $5,000,000."  (Compl. ¶ 12.)  The issue is the effect of this stipulation on the

8

aggregate amount in controversy for purposes of determining whether removal under CAFA's jurisdictional provision was proper.

Countrywide argues that Ms. Thomas's state law claims command a recovery exceeding $5 million for the class. It submits evidence that it entered into a minimum of 5,276 mortgage loan transactions with Alabama residents during the relevant time period, and that the average amount charged for origination fees, discount points, and discount fees was $981. Countrywide contends that these figures, when multiplied, yield an amount in controversy exceeding $5 million, no matter what Ms. Thomas stipulates. Hence, Countrywide argues that Ms. Thomas's stipulation "is irrelevant and should be disregarded." (Not. of Removal ¶ 28; *see also* Resp. to Mot. to Remand 7–15.) Ms. Thomas counters that she and the class "are bound by" the Complaint's stipulation as to the amount in controversy, and that this stipulation forecloses removal under CAFA. (Resp. to Mot. to Remand 8.) She further disputes that every fee "charged to her loan and to the class members was illegitimate or that every class member was incorrectly or correctly charged fees in an identical manner." (Mot. to Remand Br. 12.)

Countrywide has not challenged whether a class representative unilaterally may bind the recovery of members of a proposed class. It is noteworthy, however, that such stipulations in CAFA actions have been honored and their utility recognized in

at least three circuits.[4] *See, e.g.*, *Rolwing v. Nestle Holdings, Inc.*, No. 11-3445, 2012 WL 301030, at *2 (8th Cir. 2012) (published) ("[A] binding stipulation limiting damages sought to an amount not exceeding $5 million can be used to defeat CAFA jurisdiction."); *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) (discussing CAFA's $5 million jurisdictional threshold and recognizing that "[l]itigants sometimes . . . prevent removal, by forswearing any effort to collect more than the jurisdictional threshold"); *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1003 (9th Cir. 2007) (holding that absent evidence of bad faith by the plaintiff, the court was "obliged to honor" the complaint's stipulation that the aggregate value of the class claims did not exceed $5 million); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) (noting in dicta that "[t]he complaint did not set a cap on recovery – as it might have done if the plaintiff had represented that the class would neither seek nor accept more than $5 million in aggregate").

---

[4] Whether there are ethical ramifications to such stipulations is not at issue and need not be examined within the confines of the present motion to remand. In *Hall v. ITT Financial Services*, 891 F. Supp. 580 (M.D. Ala. 1994), a pre-CAFA case, the defendants questioned whether it was proper for a single plaintiff to bind an entire class to a specified recovery. The court decided that it "need not . . . reach this issue." *Id.* at 582. The court explained: "It may be that a plaintiff cannot make such a restriction. However, such a restriction might be a reason to deny class certification; in other words, the state court could conclude, after remand, that Hall is not an adequate class representative. This court should not, however, force a plaintiff to seek more money than she wants." *Id.*

Additionally, outside the context of CAFA, it is settled in this circuit that a plaintiff's binding stipulation limiting damages is effective for determining the jurisdictional amount in controversy. *See Hill v. BellSouth Telecomm., Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004) ("[T]he plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading" his claims in a manner calculated to achieve that result.); *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808 (11th Cir. 2003) (noting that because the plaintiff's lawyers were "officers of this court and subject to sanctions under Federal Rule of Civil Procedure 11 for making a representation to the court for an improper purpose," it would "give great deference to" and presume as true the plaintiff's stipulation limiting damages); *Darden v. Ford Consumer Fin. Co.*, 200 F.3d 753, 755 (11th Cir. 2000) (observing that the jurisdictional inquiry was "narrowed because all Plaintiffs stipulate[d] that each individual class member w[ould] neither request nor accept damages in excess of $75,000"); *Burns*, 31 F.3d at 1097–98 (holding that the plaintiff's allegations in the complaint capping damages to an amount less than the jurisdictional amount required remand absent evidence that proved to a legal certainty that the plaintiff had falsely assessed the case or had pleaded damages "grossly inconsistent with her alleged damages"); *see also Adamson v. SmithKline Beecham Corp.*, No. 11cv898, 2011 WL 6778814, at *4 (M.D. Ala. Dec. 27, 2011) ("A plaintiff may choose to sue for less

11

than the jurisdictional amount if he or she does not wish to be in federal court."); *First Guar. Bank & Trust Co. v. Reeves*, 86 F. Supp. 2d 1147, 1154–55 (M.D. Fla. 2000) ("[A] plaintiff may purposefully reduce the amount he demands in a suit to an amount lower than his actual damages if he desires to remain in a state court.").

The Supreme Court also has recognized that plaintiffs may limit their claims to avoid federal subject matter jurisdiction.  *See Homes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (As the "'master of the complaint,'" a plaintiff can plead his or her claims so as avoid the jurisdiction of federal court (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) ("If [the plaintiff] does not desire to try his case in the federal court[,] he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.").

Having surveyed the landscape as to a plaintiff's stipulation to the amount in controversy, the court turns to Countrywide's two challenges to the stipulation.  First, it contends that the stipulation is insufficient to cap recovery below $5 million because it "fail[s] to address the benefit that the proposed class would receive from the injunctive relief sought by [Ms. Thomas]."  (Resp. to Mot. to Remand 9.)  Ms. Thomas replies that, in her stipulation, she "has accounted for the value of injunctive

relief" by limiting the "amount in controversy" to less than $5 million, and that the stipulation includes "the sum total of the value of injunctive relief, equitable relief, money damages, and any other forms of relief sought, with the exception of interest and costs." (Mot. to Remand Reply Br. 6.)  Ms. Thomas has the better argument.

The stipulation does not merely cap *damages*, but rather the "*amount in controversy*." Semantics are important. "[A]mount in controversy" has a defined meaning in the law and, importantly, encompasses the value of injunctive relief. *See Federated Mut. Ins. Co.*, 329 F.3d at 807 ("When a plaintiff seeks injunctive . . . relief, the *amount in controversy* is the monetary value of the object of the litigation from the plaintiff's perspective." (citation and internal quotation marks omitted) (emphasis added))). Moreover, Countrywide presents no reason why in this case the phrase "amount in controversy" should be interpreted differently. Indeed, Ms. Thomas has confirmed that her choice of words was intentional so as to convey that the $5 million cap includes the value of the injunctive relief.[5]

---

[5] Even without the limitation on the amount in controversy, Countrywide does not attempt to place a value on the injunctive relief or to whom it would accrue. While it argues that there is an ascertainable future obligation that would be excused by the requested injunction, Countrywide does not define that future obligation, to whom it would accrue, or give it a monetary value. Indeed, it appears that any injunctive relief awarded in this case would not accrue to any member of the prospective class, as by definition they already have borrowed money from Countrywide and have been subjected to the alleged improper fees and conduct. The enjoinder of Countrywide's conduct in the future would appear to benefit only future borrowers, who are decidedly not members of this prospective class of plaintiffs. Therefore, injunctive relief appears to add no value to the amount in controversy.

Second, Countrywide argued in its Notice of Removal that Ms. Thomas's request for attorneys' fees also must be considered as part of the amount in controversy.  (Not. of Removal ¶¶ 31, 34, 43, 46.)  However, in its brief opposing remand, Countrywide appears to have abandoned that argument and for good reason. "The general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract."  *Federated Mut. Ins. Co.*, 329 F.3d at 808 n.4.  No evidence or argument has been presented that Ms. Thomas's request for "reasonable attorneys' fees" is either statutory or contractual. (Compl., Prayer for Relief, ¶ 8.)  Attorneys' fees, therefore, have not been counted for purposes of determining CAFA's amount in controversy.

Ms. Thomas, as the master of her complaint, has sought to de-federalize it and remove any basis for a federal court's subject matter jurisdiction.  She has expressly limited the recovery for the prospective class, and her "limitation will not be cavalierly cast aside."  *Land Clearing Co., LLC v. Navistar, Inc.*, No. 11-645, 2012 WL 206171, at *5 (S.D. Ala. Jan. 24, 2012).  Countrywide's evidence does not demonstrate either by a preponderance of the evidence or to a legal certainty that counsel for Ms. Thomas has falsely or incompetently valued this case or that the cap on the amount in controversy is "grossly inconsistent" with the relief claimed for her and the proposed class.  *Burns*, 31 F.3d at 1097.  On this record, the court finds that

CAFA's amount in controversy requirement is not satisfied based upon Ms. Thomas's stipulation.[6]

The court emphasizes that it takes very seriously Ms. Thomas's stipulation. The admonition in *Burns* bears repeating here. "Every lawyer is an officer of the court. And, in addition to his duty of diligently researching his client's case, he always has a duty of candor to the tribunal." 31 F.3d at 1095. "So, plaintiff's claim, when it is specific and in a pleading signed by a lawyer," as here, "deserves deference and a presumption of truth." *Id.* The court

> will not assume – unless given reason to do so – that plaintiff's counsel has falsely represented, or simply does not appreciate, the value of his client's case. Instead, [the court] will assume that plaintiff's counsel best knows the value of his client's case and that counsel is engaging in no deception. [The court] will further presume that plaintiff's counsel understands that, because federal removal jurisdiction is in part determined by the amount of damages a plaintiff seeks, the counsel's choices and representations about damages have important legal

---

[6] The parties dispute Countrywide's burden on removal in a CAFA case to prove the $5 million aggregate amount in controversy. Ms. Thomas advocates for application of the legal certainty test enunciated in *Burns*. *See* 31 F.3d at 1095 (Where a plaintiff specifically has claimed less than § 1332(a)'s jurisdictional amount in state court, a defendant, to establish removal jurisdiction, must prove to a "legal certainty" that the plaintiff would not recover less than the jurisdictional minimum if he or she prevailed). On the other hand, relying on dicta in a First Circuit opinion, Countrywide argues that the legal certainty standard should not apply in a CAFA case. *See Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 49 n.2 (1st Cir. 2009) (adopting the "reasonable probability" standard as governing a removing defendant's burden in a CAFA case, and noting that "[i]t is far from evident . . . why [in a CAFA case] the defendant should be put to a higher standard simply because the plaintiffs have pled an amount under $5 million," but declining to address the issue based upon the plaintiffs' appeal concession that the damages demand was indeterminate). This court need not decide whether in this CAFA case the legal certainty test or the preponderance-of-the-evidence test governs. That is so because Countrywide fails to satisfy even the preponderance-of-the-evidence test.

> consequences and, therefore, raise significant ethical implications for a
> court officer.

*Id.* Counsel for Ms. Thomas should remain aware that the "duty of candor goes

beyond the moral duty imposed on counsel by ethical codes or good conscience." *Id.*

at 1095 n.5. Ms. Thomas's limitation on the aggregate class recovery in her

Complaint filed in state court is "subject to the requirements of Alabama Rule of Civil

Procedure 11." *Lowery*, 483 F.3d at 1220. Similarly, counsel's representations made

in the briefs filed in support of the motion to remand in this court are subject to the

strictures of Rule 11(b) of the Federal Rules of Civil Procedure. *See Federated Mut.*

*Ins. Co.*, 329 F.3d at 808 & n.6 (observing that the plaintiff's attorneys, as officers of

the court, were "subject to sanctions" under Rule 11 "for making a representation to

the court for an improper purpose"). Counsel for Ms. Thomas has reasserted her

reliance on the stipulation before this court. That stipulation is consistent with the

Complaint's stipulation, and there is nothing in the record indicating that counsel's

representations are "presented for any improper purpose."[7] Fed. R. Civ. P. 11(b).

Therefore, Ms. Thomas will have the benefit of the CAFA stipulation.

---

[7] Ms. Thomas also asserts that she will be estopped from attempting to recover more than the amount contemplated in her stipulation. (*See* Mot. to Remand Br. 8–9 (citing *Born v. Clark*, 662 So. 2d 669, 671 (Ala. 1995) ("A party is estopped from assuming in a legal proceeding a position that is inconsistent with one the party has previously asserted.") and *Ex parte Blankenship*, 893 So. 2d 303, 306 (Ala. 2004) (Under Alabama law, "it is a well settled rule that a party is bound by what it states in its pleadings." (citation and internal quotation marks omitted))).)

**B.**     **Ms. Thomas's Stipulation as to § 1332(a)'s Amount in Controversy**

Alternatively, assuming CAFA's inapplicability, Countrywide contends that removal of this class action is appropriate under § 1332(a) because the amount in controversy as to Ms. Thomas's individual claims exceeds $75,000, exclusive of interest and costs.[8]  Countrywide argues that, because the named plaintiff satisfies the jurisdictional amount, supplemental jurisdiction can be exercised over any class members who do not independently satisfy § 1332(a)'s amount in controversy requirement.  *See* 28 U.S.C. § 1367.  In support of its argument, Countrywide relies upon *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005).  In *Exxon Mobil*, the Supreme Court held that in a § 1332(a) diversity action,

> where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction.

---

[8] "Removal jurisdiction exists only when the district court would have had original jurisdiction over the action."  *Darden*, 200 F.3d at 755.  *See* § 1441(a).  Pursuant to § 1332(a), federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs.  *See* § 1332(a). The existence of complete diversity between Ms. Thomas and Countrywide is not disputed.

*Id.* at 549.[9]   Under this discretionary supplemental jurisdiction theory, because the Complaint contains an unspecified demand for damages as to Ms. Thomas's claims, the parties agree that Countrywide "must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement."  *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citation and internal quotation marks omitted).  Countrywide satisfies its burden if it is "'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional minimum."  *Id.* (quoting *Pretka*, 608 F.3d at 754).  If the amount in controversy is not facially apparent from the Complaint, Countrywide "may introduce [its] own affidavits, declarations, or other documentation . . . ."  *Pretka*, 608 F.3d at 755.

Ms. Thomas contends that Countrywide's assertion that the amount in controversy exceeds $75,000 is "based on unrealistic and unsubstantiated predictions."  (Mot. to Remand Br. 5.)  Moreover, in her brief filed in support of the motion to remand, Ms. Thomas "stipulates that her damages are no more than

---

[9] *Exxon Mobil* was decided approximately four months after CAFA's enactment.  As noted by the *Exxon Mobil* Court, CAFA "is not retroactive" and, thus, did not govern its analysis.  *See* 545 U.S. at 571.  The Court noted, however, that "CAFA . . . does not moot the significance of our interpretation of § 1367, as many proposed exercises of supplemental jurisdiction, even in the class-action context, might not fall within the CAFA's ambit.  The CAFA, then, has no impact, one way or the other, on our interpretation of § 1367."  *Id.* at 571–72.

18

$74,999.99, and that she will file a supplement to this brief in support of remand with an affidavit to that effect."  (Mot. to Remand Br. 5.)

Concerning Ms. Thomas's stipulation, the amount in controversy must be measured as of the time of removal, not by events occurring afterward.  *See Pretka*, 608 F.3d at 751 ("A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later.").  Hence, "events occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction." *Poore v. Am.-Amicable Life Ins. Co. of Tex.*, 218 F.3d 1287, 1291 (11th Cir. 2000), *overruled in part on other grounds by Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 641 (11th Cir. 2007).  In this circuit, however, a district court may "consider post-removal evidence" in determining the propriety of removal, if it casts light on the amount in controversy at the time of removal. *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000) ("'[T]he jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time.'" (internal quotation marks and citation omitted)). Because it is not facially apparent from the Complaint that the amount in controversy as to Ms. Thomas's claims exceeds $75,000, post-removal evidence clarifying the amount in controversy at the time of removal can be considered.  Ms. Thomas has

19

stipulated in a post-removal brief that, while her damages are unspecified in the Complaint, those "damages are no more than $74,999.99."  (Mot. to Remand Br. 6 n.1.)  She indicated that an affidavit would be forthcoming detailing that stipulation; however, she failed to file that affidavit.  The court assumes that the failure was inadvertent.  An affidavit from Ms. Thomas clarifying that at the time of removal, the amount in controversy did not exceed $75,000 and specifically binding Ms. Thomas to a recovery less than § 1332(a)'s jurisdictional minimum would on this record foreclose Countrywide from establishing § 1332(a)'s amount in controversy.  *See Federated Mut. Ins. Co.*, 329 F.3d at 808 (Where the complaint contains a request for "indeterminate damages," courts give "great deference" to, and even presume true, representations that a plaintiff "does not seek and . . . *will not accept* damages" in excess of the jurisdictional minimum).[10]  The motion to remand will be granted on the condition that Ms. Thomas files the requisite affidavit.

---

[10] Ms. Thomas is stipulating as to her damages in a post-removal affidavit where the Complaint's request for damages is unspecified as to her individual claims.  Although the Eleventh Circuit did not go so far as to hold expressly that in this circumstance a post-removal stipulation must include a stipulation that the plaintiff "will not accept" damages in excess of the jurisdictional minimum, it emphasized and credited that part of the plaintiff's stipulation:  "In fact, [the plaintiff] represented that it does not seek and, more importantly, *will not accept* damages in excess of $74,000 exclusive of interests and costs."  *Federated Mut. Ins. Co.*, 329 F.3d at 808.

## IV.  CONCLUSION

Accordingly, it is ORDERED that Ms. Thomas's motion to remand (Doc. # 7) is GRANTED conditionally, provided that on or before **February 28, 2012**, she files a legally sufficient affidavit clarifying what the amount in controversy was on her individual claims at the time of removal.

DONE this 17th day of February, 2012.

_____/s/ W.  Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE